# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| CARMELLA BRICKETT, | Case No. 11 CV 2193 |
| Plaintiff, | |
| v. | Magistrate Judge Young B. Kim |
| NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK, | |
| | August 3, 2011 |
| Defendant. | |

## MEMORANDUM OPINION and ORDER

Before the court is the motion of Defendant National Railroad Passenger Corporation d/b/a Amtrak ("Amtrak") to transfer the case to either the District of Nevada or the Western District of Pennsylvania, pursuant to 28 U.S.C. § 1404(a). For the following reasons, the motion is granted and the cause is transferred to the Western District of Pennsylvania:

### Procedural History

On March 31, 2011, Plaintiff Carmella Brickett filed this action under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et. seq.*, alleging that Amtrak failed to maintain one of its train station platforms and to provide her with a safe place to work. (R. 1.) Two months later, on May 31, 2011, Amtrak filed the instant motion to transfer the case. (R. 10, 12.) On June 9, 2011, the parties consented to this court's jurisdiction pursuant to 28 U.S.C. § 636(c). (R. 15.) Brickett filed a response to Amtrak's motion to transfer on June 24, 2011, (R. 20, 21), and Amtrak filed a reply thereto on July 6, 2011, (R. 22). On July 21, 2011, the court held an oral argument on the motion and also gave the parties the option

to file a supplemental brief addressing the issues raised at the oral argument by July 29, 2011. Amtrak timely submitted a supplemental brief in support of its motion to transfer but Brickett did not.

**Background**

Brickett seeks compensation for injuries she suffered while working as a Train Attendant on an Amtrak train. The subject accident happened on April 18, 2008, at a station owned and operated by the Union Pacific Railroad[1] in Winnecuma, Nevada ("the station"). (R. 12, Def.'s Mem., Ex. A; R. 22, Def.'s Reply Mem., Ex. A.) During the course of Train #0006's regularly scheduled stop at around 6:45 p.m., Brickett got off the train to remove garbage from the café car. As she was walking over to a dumpster, she tripped over rocks and gravel on the station's platform and fell onto her face and chest. As a result, Brickett alleges that she sustained a fractured sternum as well as injuries to her face and teeth. (R. 1, Compl. ¶ 15.) Immediately after the fall, Brickett applied ice to her injuries. The following day, Brickett sought medical treatment at a hospital in Denver, Colorado. Brickett subsequently received extensive follow-up medical and dental treatment after returning home to Pittsburgh, Pennsylvania.

Brickett filed the instant action alleging that Amtrak violated its duty to properly maintain the station. (R. 1, Compl. ¶ 16.) She contends that Amtrak knew that the station

---

[1] Both parties agreed at the oral argument that Brickett has sued the proper party and that Union Pacific Railroad is not a necessary party.

was in a state of disrepair because other employees and passengers had reported the station's unsafe condition to Amtrak. (Id. at ¶ 13.) Brickett therefore alleges that Amtrak failed to exercise ordinary care in providing her with a reasonably safe place to work by neglecting to inspect, repair, and warn her of the unsafe condition at the station, which resulted in her injuries. (Id. ¶¶ 16, 17.)

Amtrak moves to have this case transferred to either the District of Nevada or to the Western District of Pennsylvania. Amtrak contends that transferring the case to the District of Nevada would be proper because Brickett's cause of action arose in Nevada. Amtrak also contends that transferring the case to the Western District of Pennsylvania would be proper because Brickett lives in Pittsburgh and because she received the bulk of her medical treatment for her injuries in the Pittsburgh area. Additionally, Amtrak points out that material witnesses in this case are located closer to the District of Nevada and the Western District of Pennsylvania than to the Northern District of Illinois. Amtrak asserts that Brickett's only connection to the Northern District of Illinois is that her attorney's office is located in Chicago.

Brickett counters that the Northern District of Illinois is the most convenient forum because she has worked as an Amtrak employee "out of Chicago" for the past eight or nine years and most of the important fact witnesses work out of Chicago, including one who lives in Illinois. Brickett explained at oral argument that she lives in Pittsburgh but that she rides the Amtrak to Chicago and begins her assignment on Amtrak trains originating from

Chicago, which is her "home terminal." She argues that neither Nevada nor Pennsylvania is more convenient than Illinois because the witnesses in this case are located in places other than Nevada or Pennsylvania, with only one witness located in Nevada and only her medical witnesses located in Pennsylvania. Brickett further asserts that because the Nevada station is under reconstruction, having physical access to the station should not be a consideration. She points out that photographs taken of the station near the time of her accident convey its condition at the time of the accident more accurately than could any information gleaned from accessing the newly renovated station.

**Analysis**

The relevant factors point to the conclusion that this case should proceed in the Western District of Pennsylvania. "Congress has codified the doctrine [of forum non convenience] and has provided for transfer rather than dismissal, when a sister federal court is the more convenient place for trial of the action." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007); *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 717-18 (7th Cir. 2002). A court may "[f]or the convenience of parties and witnesses, in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought."[2] 28 U.S.C. § 1404(a). Under § 1404(a), the moving party must show that

---

[2] FELA has its own special venue provision. A FELA action may be brought "in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action." 45 U.S.C. § 56. This venue provision provides a plaintiff with a wide choice of forums, however, it "is fully subject" to the transfer provisions of 28 U.S.C.

"(1) venue was proper in the transferor district, (2) venue and jurisdiction would be proper in the transferee district, and (3) the transfer will serve the convenience of the parties and witnesses as well as the interests of justice." *Continental Cas. Co. v. Staffing Concepts, Inc.*, No. 06 C 5473, 2009 WL 3055374, at *2 (N.D. Ill. Sep. 18, 2009) (citation omitted). The parties agree that venue and jurisdiction are proper in all three of the districts at issue in this case. As such, the court's decision turns on whether Amtrak has met its burden of demonstrating that the "transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d, 217, 220 (7th Cir. 1986).

In deciding whether a transfer of the case will serve the convenience of the parties and witnesses, and promote the interests of justice, a court must analyze the private interests of the parties as well as the public interests of the court. *Research Automation, Inc. v. Schrader-Brideport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). The weighing of the relevant interests "involves a large degree of subtlety and latitude, and therefore, is committed to the sound discretion of the trial judge." *Coffey*, 796 F.2d at 219. The factors relevant to the parties' private interests include "(1) plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease and access to sources of proof, (4) the convenience of the parties and (5) the convenience of the witnesses." *First Nat'l Bank v. El Camino Resources, Ltd.,* 447 F.Supp.2d 902, 912 (N.D. Ill. 2006). The court must also

---

§ 1404(a). *Binz v. Iowa Interstate R.R., Ltd.*, No. 98 C 6381, 1999 WL 90642, at *1 (N.D. Ill. Feb. 10, 1999).

5

consider the "interest of justice" or the "public interest," which "relates to the efficient administration of the court system." *Research Automation,* 626 F.3d at 978. These public interest factors include the following: "[1] docket congestion and likely speed to trial in the transferor and potential transferee forums; [2] each court's relative familiarity with the relevant law; [3] the respective desirability of resolving controversies in each locale; and [4] the relationship of each community to the controversy." *Id.* (citations omitted). Here, when the required private and public interests are considered and balanced, these factors weigh in favor of transferring the case to the Western District of Pennsylvania.

**A.  Private Interests**

**1.  Brickett's Choice of Forum and Site of Material Events**

A plaintiff's choice of forum is generally given substantial weight, particularly when it is the plaintiff's home forum. *Vandeveld v. Christoph*, 877 F.Supp. 1160, 1167 (N.D. Ill. 1995). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re National Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). However, a plaintiff's choice of forum is not conclusive and may be afforded less deference when another forum has a stronger relationship to the dispute or when the chosen forum has no significant connection to the site of material events. *Gueorguiev v. Max Rave, LLC*, 526 F.Supp.2d 853, 857 (N.D. Ill. 2007).

6

Here, Brickett's choice of forum has minimal value, if any, because Brickett does not live in the Northern District of Illinois and because it has no connection whatsoever to the material events in this case. *See e.g., Chicago, Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955) (a plaintiff's choice of forum has only "minimal value where none of the conduct occurred in the forum selected by plaintiff"); *Presnell v. Cottrell*, No. 09-CV-1024, 2010 WL 1710832, at *3 (S.D. Ill. Apr. 28, 2010) ("the importance of the plaintiff's choice of forum is reduced when the plaintiff does not live in the forum, few relevant facts occurred in the forum and other factors weigh heavily in favor of a transfer"). Brickett lives in Pittsburgh, Pennsylvania and she tripped and fell in Winnecuma, Nevada. After her accident, Brickett first received medical treatment for her injuries in Denver and later received more extensive treatment closer to her home in Pittsburgh. Under these circumstances, the first and second private factors weigh in favor of transferring the case to either Nevada or Pennsylvania.

### 2. Relative Ease and Access to Sources of Proof

The relative ease and access to proof also weighs in favor of transferring this case to the Western District of Pennsylvania because the majority of Brickett's medical records relevant to her claim and her treating physicians are located in the Pittsburgh area. Although Brickett's trip and fall occurred at the station in Nevada, the parties agree that having access to this station is not important because the station is undergoing reconstruction and because photographs taken of the premises near the time of Brickett's injury are available.

7

Accordingly, the third and fourth factors weigh in favor of transferring the case to the Western District of Pennsylvania.

   3.     **Convenience of the Parties**

Turning to the convenience of the parties factor, the court "considers the residence of the parties and their ability to bear the expense of trial in a particular forum." *Federated Dep't Stores, Inc. v. U.S. Bank Nat'l Ass'n*, No. 00 C 6169, 2001 WL 503039, at *3 (N.D. Ill. May 11, 2001) (citation omitted). Thus, "[i]t must be shown that the original forum is inconvenient for the defendant and that the alternative forum does not significantly inconvenience the plaintiff." *Continental Cas. Co.*, 2009 WL 3055374, at *5 (citation omitted). Here, it is undisputed that Brickett lives in Pittsburgh and Amtrak does business in Illinois, Nevada, and Pennsylvania. While Amtrak likely can bear the expense of trial in any of the three forums, it would be inconvenient for Amtrak to litigate this case in Illinois or in Nevada because several key non-party witnesses and relevant medical evidence are located in Pennsylvania. Therefore, because the Northern District of Illinois and District of Nevada are inconvenient forums for Amtrak, but the Western District of Pennsylvania would not be an inconvenient forum for Brickett, this factor weighs in favor of transfer to the Western District of Pennsylvania.

   4.     **Convenience of the Witnesses**

The convenience of the witnesses is generally the most important factor in deciding whether to grant a motion to transfer venue. *First Nat'l Bank*, 447 F.Supp.2d at 913. "More

8

weight is afforded non-party witnesses than witnesses within the control of the parties, as it is presumed that party witnesses will appear voluntarily." *Id.*; *see also Moore v. Motor Coach Indus., Inc.*, 487 F.Supp.2d 1003, 1008 (N.D. Ill. 2007). In assessing this factor, courts must consider the number of witnesses located in each forum and the importance of each witness's testimony. *First Nat'l Bank*, 447 F.Supp.2d at 913. A court may also consider the "availability of compulsory process for the attendance of unwilling witnesses and the costs of obtaining the attendance of the witnesses." *Id.* (citation omitted). The party requesting transfer must identify the key witnesses to be called and "establish that the nature and quality of their testimony with respect to the issues in the case warrant the case's transfer." *Juarez v. National R.R. Passenger Corp.*, No. 06 C 3681, 2007 WL 2713357, at *2 (N.D. Ill. Sept. 12, 2007).

Amtrak argues that the convenience of party and non-party witnesses weighs towards transferring this case to either the District of Nevada or the Western District of Pennsylvania. Amtrak has identified four party employee-witnesses, Eric Gustafson, Tim Gallagher, Ben Coleman, and Rich Fertig, and one non-party witness, Dr. Lisa Heidt, for whom, according to Amtrak, the District of Nevada is the most convenient forum. (R. 12, Def.'s Mem. at 11.) In particular, Gustafson lives in Utah and Gallagher, Coleman, Fertig, and Heidt all live in Colorado.[3] (Id.) According to Amtrak, Gustafson, an Amtrak conductor, provided assistance

---

[3] Brickett claims that Gallagher resides in California, not Colorado, but that he is now temporarily living in Hawaii. (R. 20, Pl.'s Resp. at 4.) Even if this is true, Nevada is still closer to California and Hawaii than Chicago.

9

to Brickett after she fell at the station and Gallagher, Coleman, and Fertig, Amtrak supervisors, investigated the accident. (Id.; R. 20, Pl.'s Resp. at 4.) Heidt is the physician who first treated Brickett after her fall. (R. 12, Def.'s Mem. at 11.) Amtrak has also identified three Pittsburgh area physicians, Dr. Mark Silberg, Dr. Alfred Burgo, and Dr. Joseph Bulobeck, and one Pittsburgh area dentist, Dr. Lawrence Picciano, as key non-party witnesses who provided Brickett with extensive follow-up medical and dental treatment for her alleged injuries from the fall. (Id.; R. 10, Def.'s Mot. at 4; R. 22, Def.'s Reply at 5-6.) Amtrak therefore argues that transfer to either the District of Nevada or the Western District of Pennsylvania is warranted because these two districts are more convenient for both the party witnesses who will testify about the condition of the premises at the station and for the non-party witnesses who will testify about the nature and extent of Brickett's injuries.

Brickett asserts that the Northern District of Illinois is the most convenient forum because she has "worked out of Chicago for the past 8 or 9 years," party employee-witnesses, James Carson and Don Boyt, also "work out of Chicago," and one party employee-witness, Loxie Sanders, lives in Illinois. (R. 20, Pl.'s Resp. at 3.) Carson and Boyt, Amtrak sleeping car attendants, are expected to testify about the condition of the premises at the station at the time of the incident and that they notified Amtrak about the poor condition of the premises at the station prior to her fall.[4] (Id.) Sanders, an Amtrak conductor, is also expected to testify

---

[4] Plaintiff represented at the oral argument that her witnesses are expected to testify that they all notified Amtrak management of the poor conditions at the station prior to her fall, but she did not amend her affidavit attesting to this new information.

10

about the same and about her own accident at the station a year after Brickett's accident. (Id.) Brickett identified three additional Amtrak conductors, Ray Peakerser, Lance Barney and Tim Elm, who are also expected to provide similar testimony as the other Amtrak employees she has named. (Id. at 3-4.) But the Northern District of Illinois is not a particularly convenient forum for these additional witnesses, who live in Colorado, Utah, and Nevada, respectively. (Id.)

In weighing the convenience of the various witnesses, a court "generally assigns little weight to the location of employee-witnesses. Because these witnesses usually are within the control of the parties, they are likely to appear voluntarily in either forum." *Abbott v. Lockheed Martin Corp.*, No. 06-CV-0701, 2007 WL 844903, at *3 (S.D. Ill. March 20, 2007). Here, it is presumed that the 10 identified employee witnesses and other Union Pacific Railroad employees will appear voluntarily in any of the three districts at issue. Furthermore, at oral argument, counsel for both parties represented that from their experience litigating FELA cases all over the country, scheduling and deposing various employees of Amtrak have never been difficult.

In contrast, the medical witnesses, Silberg, Burgo, Bulobeck, and Picciano—who possess relevant information about the nature and extent of Brickett's injuries—will not appear voluntarily in this district or the District of Nevada as they are medical professionals outside of those districts' subpoena range. *See* Fed.R.Civ.P. 45(c)(3)(A)(ii); *Jaramillo v. Dineequity, Inc.,* 664 F.Supp.2d 908, 915 (N.D. Ill. 2009). Heidt, another non-party medical

11

witness, lives in Colorado and is outside the subpoena range of all three Districts. But because four of the five key medical witnesses in this dispute are located in the Pittsburgh area, the convenience factor weighs in favor of transferring the case to the Western District of Pennsylvania. *Karrels v. Adolph Coors Co.*, 699 F.Supp. 172, 176 (N.D. Ill. 1988) ("The inability to compel the appearance of material, non-party witnesses weighs in favor of transfer."); *see also Anchor Wall Sys., Inc. v. R & D Concrete Prods., Inc.*, 55 F.Supp.2d 871, 874 (N.D. Ill. 1999) ("The convenience of non-party witnesses is often viewed as the most important factor in the transfer analysis."); *Household Fin. Servs., Inc. v. Prestige Fin. Servs. Corp.*, No. 99 C 1756, 1999 WL 608705, at *2 (N.D. Ill. Aug. 6, 1999) (finding the "inability to compel the attendance of material non-party witnesses to be a crucial factor militating in favor of transfer").

**B.     Public Interests**

The public interest factors in this case also weigh in favor of transferring the case to the Western District of Pennsylvania. In addition to the private interest factors, the court must also consider the "interest of justice" or public interest factors, which include "[1] docket congestion and likely speed to trial in the transferor and potential transferee forums; [2] each court's relative familiarity with the relevant law; [3] the respective desirability of resolving controversies in each locale; and [4] the relationship of each community to the controversy." *Research Automation,* 626 F.3d at 978 (citations omitted). This analysis focuses on the efficient administration of the courts, not the merits of the underlying dispute.

*Coffey*, 796 F.2d at 221. Therefore, "[e]ven where the convenience of the parties and witnesses may call for a different result, the 'interest of justice' component may be determinative in a particular case." *Juarez*, 2007 WL 2713357, at *3 (citation omitted).

In this case, the first two public interest factors are neutral because all three districts are familiar with FELA and the parties have presented no evidence that any one of the districts is substantially more congested or less efficient than another. The court's own review of the relevant median statistical information shows that a civil matter takes, from filing to disposition, 29 months in the Western District of Pennsylvania, 27 months in the District of Nevada, and 26 months in the Northern District of Illinois. *See* http://www.uscourts.gov/cgi-bin/cmsd2010dec.pl. (Federal Court Management Statistics for 2010)(last visited Aug. 2, 2011). The statistical differences are minimal.

But the third and fourth public interest factors weigh in favor of transferring the case to the Western District of Pennsylvania because there is no connection between the Northern District of Illinois and any of the material events in this case. The Western District of Pennsylvania is the most appropriate forum among the three districts to hear this case because it has an interest in resolving controversies pertaining to public safety and ensuring that its residents have safe work places. Amtrak does business in Pennsylvania and Brickett works for Amtrak and lives there. Accordingly, the public interest factors also weigh in favor of transferring the case to the Western District of Pennsylvania.

## Conclusion

For the foregoing reasons, Amtrak's motion to transfer the case pursuant to 28 U.S.C. § 1404(a) is granted. This action is hereby transferred to the Western District of Pennsylvania.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**